IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Marsha Mills**, | : | Case No. 5:11 CV 408 |
| Petitioner, | : | |
| vs. | : | |
| **Ginine Trim, Warden,** | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Respondent. | : | |

## I. INTRODUCTION.

This case, filed pursuant to 28 U. S. C. § 2254, was automatically referred to the undersigned Magistrate Judge for report and recommendation pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES.  Pending is Petitioner's  First Petition for Writ of Habeas Corpus, Respondent's Return and Petitioner's Traverse (Docket Nos. 2, 14 & 22).  For the reasons that follow, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

## II. FACTUAL BACKGROUND.

A habeas court must presume the state court's factual findings are correct.  28 U.S.C. § 2254(e)(1) (Thomson Reuters 2012).  The habeas petitioner shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence.  28 U. S. C. § 2254(e)(1)(Thomson Reuters 2012).  Since Petitioner has failed to rebut the correctness of the factual background made by the Fifth District Appellate, the following facts are presumed correct.

Douglas Shoup and his spouse, Kristen Shoup, were the parents of Evan and Noah.  They hired Petitioner to provide daycare for Evan and Noah.  Kristen Shoup, testified that during the morning of May 10, 2006, she got Noah dressed and took him to the Petitioner's home.  She stated that Noah did not have any physical injuries in the morning.  She stated that when she arrived at Petitioner's home, Petitioner's sister, Jerri, and Petitioner's two granddaughters (an infant and a two year old) were present.  She testified Petitioner appeared to have been crying but was fine when she left the house.  Kristen also testified that Noah, who was approximately two years of age at the time of the incident, began to walk when he was eleven months old and now went down stairs either holding onto the railing or scooting down the steps on his bottom.

At approximately 12:30 P.M. on May 10, 2006, Doug Shoup took Evan to Petitioner's home. At approximately 2:25 P.M., Petitioner called Doug and told him Noah had fallen off the back porch, was unconscious and she had not called 911.  Doug called 911 for emergency assistance and rushed to Petitioner's home.  When he arrived, he ran to the back porch but no one was there.  He then ran into the front of the house and found paramedics working on Noah in the bedroom.  He testified that Petitioner told him Noah fell off the bottom step of the back porch stairs.

*State v. Mills*, 2009 WL 1041441, *1 (2009).

### III. PROCEDURAL BACKGROUND.

A.    *Indictment and Plea*.

Petitioner was indicted for three counts of murder, a violation of OHIO REV. CODE §

2

2903.02(B), one count of felonious assault, a violation of OHIO REV. CODE § 2903.11(A)(1) and two counts of endangering children, a violation of OHIO REV. CODE § 2919.22(B)(1) and (3) (Docket No. 14-1, pp. 2-6, 13 of 613).  On October 12, 2006, Petitioner entered a plea of not guilty and Petitioner was released on a personal recognizance bond (Docket No. 14-2, pp. 1-7 of 613).

**B.**      *The Trial.*

The case came on for jury trial on May 30, 2007.  James Shultz from the New Philadelphia Fire Department testified that, at 2:31 P.M., on May 10, 2006, he responded to a 911 call at Petitioner's home.  Upon arrival, he found Noah in the bedroom unconscious.  He stated that Petitioner told him Noah had never returned to consciousness.  Petitioner also told him that Noah had fallen down three steps and hit his back on the concrete at the bottom of the steps.  He administered emergency medical treatment including epinephrine to stimulate his heart.  In the ambulance, emergency medical personnel placed an endotracheal tube in Noah's trachea to provide oxygen directly to Noah's lungs.  He stated that, upon arrival at the hospital, Noah's heart started to show signs of attempting to beat again.  He also stated Noah's pupils remained fixed and dilated and Noah never regained consciousness.  He testified that, in his experience, he has never known the back board, CPR procedures and/or cervical collars to bruise or injure patients.

Allen Dougherty, a firefighter/paramedic from the New Philadelphia Fire Department (NPPD), testified that Petitioner told him Noah fell down the steps.  He observed the steps and relayed the information to the paramedics.

Charles Willet from the NPPD testified that Petitioner said that Noah stepped off the back porch, missed a step, fell and hit the cement.  Petitioner claimed that she rushed over, picked up Noah, took him in the house and applied cold compresses to his head.  Petitioner also told him that

3

Noah "came to," refused the compress and lost consciousness.

Detective Larry Hootman, a detective with the NPPD testified that he too, was told that Noah had fallen down the back steps.  Getting on his hand and knees, Detective Hootman did not see any signs of blood or other evidence of a fall.

The emergency room physician, Dr. Current, testified that he continued to administer advanced life support which caused Noah's heart to start beating.  While waiting for transport to Akron Children's Hospital, they performed diagnostic tests of Noah's brain, neck, chest and abdomen.  The results from the CAT scan of Noah's brain showed a subarachnoid bleed around the brain and a small pinpoint hemorrhage on the left temporal lobe.  Results from a CAT scan showed no fractures but did show fluid and bruising in Noah's left lung.  The emergency room physician testified that an accidental fall would typically cause abrasions and/or a buckle fractures.  These injuries were inconsistent with how children tend to fall.  Dr. Current also testified the bruising to the left side of Noah's face was not caused by a cervical collar.

Dr. Emily Scott, a pediatric emergency medicine physician in the emergency room of Akron Children's Hospital, testified that when Noah arrived at the hospital, he was given a blood transfusion. She testified the typical injuries sustained by a child from a fall onto concrete include abrasions, a big goose egg and lacerations.  She stated that she did not observe any of these types of injuries on Noah and that Noah's injuries were not consistent with a three and a half foot fall onto concrete.

Dr. Richard Daryl Steiner, a pediatrician at Akron Children's Hospital, testified that, in his opinion, Noah's injuries were caused by rapid rotational acceleration and deceleration.  He stated that when a child experiences a rapid acceleration and deceleration force, the symptoms of the injury

4

are immediate and may cause a profound alteration in consciousness and, as in Noah's case, cardiopulmonary arrest.  With a fall to the ground, one would expect to see a single impact injury such as a goose egg, skin injury or subdural hemorrhage.  He stated Noah's injuries "were consistent with a mechanism of rotational acceleration and deceleration trauma and those injuries were the thin film subdural hematoma along the surface of the brain and between the two halves of the brain as well as bilateral retinal hemorrhaging."  In short, Noah's injuries were not consistent with a fall down three steps because there was no soft injury to the scalp, no soft tissue swelling and no skull fracture present.

Dr. John Pope, a pediatric intensive care specialist at Akron Children's Hospital, testified that when Noah was admitted to the pediatric intensive care unit, he was in cardiac arrest, was resuscitated and exhibited no neurological function on exam.  The most prominent sign of injury was bilateral retinal hemorrhaging.  A breathing machine was used and Noah was given fluids and medication.  There was bleeding in Noah's head.  Noah was essentially brain dead and his condition did not improve with treatment.  It was Dr. Pope's opinion that Noah's injuries were consistent with a rotational "acceleration deceleration" injury.

Dr. George Sterbenz, a forensic pathologist employed by the Summit County Medical Examiner's Office, testified that he was present on May 11, 2006 for Noah's organ procurement and took several photographs during the procedure.  On May 13, 2006, he performed an autopsy on Noah.  He testified that prior to the organ procurement, Noah had three faint bruises on his right shoulder and bruising on his low mid-back and a clustering of bruises at the right lower back.  He stated there were two areas of bruising on Noah's right arm.  The distribution of bruises on the left side of Noah's face would be consistent with a slap, i.e., the impact of a curving hand, and appeared

to be recent.  In short, the pattern of injuries was not consistent with a short distance fall or a fall down three stairs.  The manner of Noah's death was homicide.

Petitioner called witness Chris Allen Van Ee, an employee of Design Research Engineering, who specializes in biomechanics.  He testified that based on his tests and research, a fall like the one described by Petitioner could result in a serious head injury with engineering certainty.  On cross-examination, Mr. Van Ee admitted that none of the scenarios from his testing of a child's fall depicted nine impacts to the top of the child's head and five impacts to the bottom of the child's head. He further admitted, he did not perform a test that reproduced the exact injuries which Noah suffered.  He also stated his testing did not include shaking a child, while causing the head to come in contact with an object.  He finally testified that, although there are some instances of death as the result of a short fall, in the majority of studies, a fall from the distance in the testing did not and would not result in severe injury or death.

Dr. John Jerome Plunkett, Petitioner's expert witness, testified he reviewed Noah's Union Hospital records, the Akron Children's Hospital Records, the New Philadelphia Police reports, the autopsy report, the paramedics report, the EMT reports, the autopsy photographs and microscopic slides. He stated that, in his opinion, a single head impact injury caused Noah's death.  He further stated that, in his opinion, the death was accidental.  The injury was consistent with Plaintiff's account of what happened.  He explained that in order to accelerate the eye to a level that would cause retinal hemorrhage, acceleration would have to equal approximately forty thousand times the acceleration due to gravity.  He stated it was not possible to achieve that acceleration, even experimentally, on an eyeball with a diameter of half an inch or five eighths of an inch.  On cross-examination, Dr. Plunkett stated that he was not aware of any study which reported a child

6

dying from a fall down stairs which were three and a half feet in height.  He further testified that he would not expect a cervical collar, which had been formed from a towel, to cause bruising to the side of a child's face.  Hypothetically, Dr. Plunkett agreed that, if someone had nine distinct impacts on the top of their head, along with a cluster of approximately five other impacts to the back occipital portion of their head, the injuries would not be typical of a fall down three steps.

On rebuttal, the state re-called Dr. Sterbenz who testified that, if a bruise is very mild, it can look pink to red in color.  He stated that, if a bruise is more deeply under the skin, it will look more purple.  If the bruise has more leakage of blood, it will look more purple and even black and over time it will proceed to change color, changing shades of yellows and browns and greens.  He stated that the depth of the injury implies the amount of force. He testified that the back of Noah's head showed one to four discreet blunt force impacts.  He stated the exact number could not be determined because there could be overlapping impacts where enough force was used to result in bleeding into the membrane overlying the child's skull.  He testified there were nine distinct impacts to the top of Noah's head and further stated he could not eliminate the possibility that there may have been more than one impact at each individual impact site.

*State v. Mills,* 2009 WL 1041441, *1 -9 (2009).

### B.    *The Verdict and Sentences*.

On June 15, 2007, the jury returned a verdict of guilty of murder as set forth in counts one and two of the indictment, guilty of felonious assault as set forth in count four of the indictment and guilty of endangering children as set forth in count five of the indictment (Docket No. 14 -22, pp. 1-5 of 513).

On June 20, 2007, Petitioner was sentenced to serve an indefinite term of fifteen years to life

on counts one and two of the indictment, both being counts of murder and eight years on counts four and five of the indictment, both being counts of felonious assault. The sentences were to be served concurrently (Docket No. 14-24).

**C.    *Direct Appeal*.**

Petitioner filed a notice of appeal (Docket No. 14-25, pp. 1-2 of 513). The court of appeals remanded the case to the trial court to enter reasons for denying the motion to stay execution on July 11, 2007 (Docket No. 14-28). The trial judge entered a decision denying the motion to stay execution on July 13, 2007 (Docket No. 14-29). On July 17, 2007, Petitioner filed a supplement to the motion for bail (Docket No. 14-30). The court of appeals denied the motion for stay of execution of sentence (Docket No. 14-31). In her appellate brief, Petitioner presented seven assignments of error:

(1)    The court erred when it placed unwarranted restrictions on the Defendant's expert witness and allowed the state to introduce evidence of a scientific experiment without conducting the required pretrial hearing on admissibility.

(2)    The trial court committed plain error when it admitted irrelevant, gruesome, repetitive and substantially prejudicial photographs of the deceased child in violation of Petitioner's constitutional rights.

(3)    The verdict was against the manifest weight of the evidence and defendant's conviction was not supported by sufficient evidence.

(4)    The court erred when it failed to record all of the proceedings in the case.

(5)    Petitioner was deprived of the effective assistance of (trial) counsel due to the numerous error and omissions which prejudiced Petitioner's trial.

(6)    The prosecution prejudiced the outcome of the case through improper closing.

(7)    The trial court erred in imposing multiple punishments for allied offenses of similar import contrary to OHIO REV. CODE § 2941.25 and the Double Jeopardy Clause of the Ohio and the United States Constitution (Docket No. 14-32).

The court of appeals determined:

(1)    Absent a showing that a trial court abused its discretion, an appellate court will not disturb the trial court's ruling on the admissibility of evidence.

(2)    The introduction of the autopsy photographs was not an obvious defect in the trial proceedings.

8

(3)     After viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt.

(4)     Petitioner failed to affirmatively demonstrate any material prejudice which resulted in unrecorded sidebars.

(5)     Petitioner failed to establish that trial counsel's conduct fell below an objective standard of reasonableness.

(6)     Based on the court's review of the record and taking the arguments of counsel as a whole, there was no plain error.

(7)     The seventh assignment of error was sustained.  The case was remanded to the trial court with instructions to merge Petitioner's conviction for child endangering and felonious assault into the conviction of felony murder, to merge the two counts of felony murder into one and to enter a single conviction and impose a single sentence for these allied offenses.

(Docket No. 14-35).

## D.     *Appeal to the Supreme Court of Ohio*

Petitioner filed a notice of appeal on June 1, 2009 (Docket No. 14-36).  Petitioner's explanation as to why her case was of public or general interest and involved substantial constitutional questions included seven propositions of law:

(1)     A witness who is qualified as an expert under OHIO R. EVID. 702 may not provide expert opinions that are based on an untested potentially unreliable methodology.

(2)     The Fifth and Sixth Amendments to the United States Constitution as incorporated by the Fourteenth Amendment and OHIO R. EVID. 401 and 403 prohibit the admission of autopsy photographs that are not probative, nor relevant and highly prejudicial.

(3)     When evidence is equipoised in a criminal case, the defendant must be acquitted and to hold otherwise is a violation of Defendant's Fifth and Sixth Amendment rights to Due Process.

(4)     Ineffective assistance of counsel is a violation of a defendant's Sixth Amendment Right to counsel.

(5)     Out-of-court statements made by a defendant that are not admissions against interest are hearsay and to allow their admission denies the defendant Fifth and Sixth Amendments right to due process and a fair trial.

(6)     The outcome of a trial can be prejudiced by a prosecutor's misconduct no matter when it occurs during the trial process.

(7)     When a court of appeals bases its decision on an incorrect reading of the record, the Supreme Court will vacate that decision and remand the case to the court of appeals to be re-analyzed and redrafted using the correct set of facts.

.

(Docket No. 14-37).

Upon consideration of the jurisdictional memoranda, Chief Justice Thomas J. Moyer denied

9

leave to appeal and dismissed the appeal as not having any substantial constitutional question (Docket No. 14-38).  Chief Justice Moyer ordered that the motion for reconsideration be denied (Docket No. 14-40).

**D.**     ***Petition to Vacate or Set Aside Judgment and Sentence***.

Petitioner filed a petition to vacate or set aside judgment or set aside judgment and sentence. Supported by affidavits from Mark A. Serrott, an Ohio attorney[1], Dr. John Plunkett, Petitioner's expert witness[2], as well as the jury questionnaire of Juror 66[3], Petitioner asserted fourteen claims that should void or make voidable her conviction:

(1)     Petitioner was denied the effective assistance of trial counsel when counsel failed to move to exclude and later failed to object to the numerous autopsy photographs.
(2)     Petitioner was denied the effective assistance of counsel when trial counsel failed to move to exclude and later failed to object to the evidence of bruising on Shoup's body.
(3)     Petitioner's conviction was void and/or voidable because trial counsel stipulated to 19 autopsy photographs that were introduced into evidence.
(4)     Petitioner's conviction was void and/or voidable because trial counsel failed to request an in-camera review of the State's witness statements.
(5)     The treating physician's opinion as to the cause of death was incompetent.
(6)     Petitioner's conviction was void and/or voidable because trial counsel failed to file a motion for change of venue.
(7)     Petitioner's conviction was void and/or voidable because trial counsel was ineffective for calling Attorney Joseph Tripodi to the stand to testify as to Plaintiff's confidential and privileged communication with him.
(8)     Petitioner's conviction was void and/or voidable because trial counsel was ineffective for failing to competently cross-examine the State's expert witness.

---

[1]

Mr. Serrott, a licensed Ohio attorney with 90 criminal trials, averred that based on his expertise, training and review of the trial materials, defense counsel's performance was so deficient that she was deprived of a meaningful fair trial.

[2]

Dr. Plunkett, a physician licensed to practice in the States of Minnesota and Wisconsin, averred that he provided defense counsel several medical articles and scientific research prior to trial which were critical to the cross-examination of the State's expert witnesses.  It was his opinion that defense counsel was confused about the issues of the case and he failed to properly test the validity of the State's medical experts.

[3]

Juror No. 66 had heard, read, and discussed Noah Shoup's death.  Juror No. 66 was upset, sad and sickened by this event.

10

(9)     Petitioner was denied the effective assistance of counsel who was familiar with the rules of evidence, general trial procedure and the admissibility of evidence.

(10)    Petitioner was denied the effective assistance of counsel when trial counsel failed to confront the State's expert, Dr. Steiner, with evidence that he had given erroneous medical opinions in prior cases.

(11)    Petitioner was denied the effective assistance of counsel when trial counsel conducted an ineffective direct examination of the forensic pathology expert, Dr. Plunkett.

(12)    Petitioner was denied the effective assistance of counsel who should have moved to redact Shoup's autopsy to remove gruesome, irrelevant and prejudicial information from the report.

(13)    The trial court erred when refusing to permit the jurors to have Dr. Plunkett's curriculum vitae during deliberations.

(14)    Petitioner's conviction was void and/or voidable because trial counsel failed to remove Juror 66 from the jury for cause.

(Docket No. 14-41).

**1.      *Motion to Dismiss the Petition and its Amendment to Petition to vacate or set aside Judgment and sentence.***

Petitioner amended her Petition to Vacate and added an additional claim:

(15)    Defense counsel was ineffective for failing to adequately conduct voir dire and properly use peremptory challenges to remove jurors for cause.

Petitioner requested the following relief:

(1)     An adequate opportunity under the OHIO RULES OF CIVIL PROCEDURE [sic] to obtain discovery.

(2)     An evidentiary hearing pursuant to OHIO REV. CODE § 2953.21.

(3)     A finding that Petitioner's conviction is void or voidable as to the first through fifteenth claims in the Petition and Supplement to the Petition.

(Docket No. 14-42).

Assistant prosecuting attorney Michael J. Ernest requested that the court dismiss Petitioner's

Petition and Amendment as they were barred on *res judicata* grounds (Docket No. 14-43).

Petitioner argued that all claims set forth within the post-conviction petitioner were properly before

the court and amount to substantive grounds for relief (Docket No. 14-44).

11

*2.*       ***The Trial Court's Opinion on the State's Motion to Dismiss***.

On July 18, 2008, the trial court rendered a decision which can be summarized as follows:

(1)       As to the first through the fifteenth claims, each was barred by *res judicata*.  Each claim for relief could have been raised on direct appeal.

(2)       For these reasons, Petitioner was not entitled to an evidentiary hearing pursuant to OHIO REV. CODE § 2953.21.

(3)       The State's motion to dismiss was granted and the case was dismissed at Petitioner's costs.

(Docket No. 14-45)**.**

*3.*       ***Motion for Reconsideration of the Trial Court's Decision Granting the Motion to Dismiss***.

Petitioner filed a motion for reconsideration on August 1, 2008 and the State of Ohio filed a memorandum in opposition on August 8, 2008 (Docket Nos. 14-54 & 14-55).  On September 12, 2008, the trial court judge denied the motion for reconsideration (Docket No. 14-56).

On September 25, 2008, Plaintiff filed an appeal of the trial judge's decision denying the motion for reconsideration (Docket No. 14-57).  In her brief, Petitioner asserted one assignment of error:

The trial court erred when it denied Petitioner's motion for reconsideration of its entry denying post-conviction relief, and erred in denying an evidentiary hearing.

(Docket No. 14-58).

On October 21, 2009, the court of appeals determined that the trial court did not err in dismissing Petitioner's motion for reconsideration without an evidentiary hearing.  The judgment of the court of common pleas was affirmed (Docket No. 14-60).

Petitioner filed a notice of appeal of the appellate court's October 21, 2009 judgment in the Ohio Supreme Court on December 9, 2009 (Ohio Supreme Court of Ohio No. 09-2174)(Docket No. 14-61).  In the memorandum, there were two propositions of law:

12

(1)    A post-conviction hearing shall be granted unless the petition and the files and records of the case show the petitioner is not entitled to relief.

(2)    The failure of trial counsel to question a prospective juror on his relationship to a police officer, move to dismiss that juror for cause, or in the alternative, exercise a peremptory challenge on the juror constitutes the denial of effective assistance of counsel.

(Docket No. 14-62).

Chief Justice Moyer denied Petitioner leave to appeal and dismissed the appeal as not having any substantial constitutional question on March 3, 2010 (Docket No. 14-63).

### 4.    Appellate Court's Review of the Petition to Vacate or Set Aside Judgment and Sentence and its Amendment.

Petitioner filed a timely notice of appeal on August 8, 2008 from the final judgment entry denying the petition to vacate or set aside judgment (Docket No. 14-46).  In the brief, Petitioner asserted four assignments of error:

(1)    The trial court erred in denying Petitioner's claims for relief that she was deprived of the effective assistance of counsel as guaranteed by the Ohio and United States Constitutions.

(2)    The trial court erred when it refused to grant an evidentiary hearing on Petitioner's post conviction petition in violation of Petitioner's rights as guaranteed by the United States and Ohio constitutions.

(3)    The trial court erred when it denied Petitioner's request to conduct discovery.

(4)    The trial court erred when it refused to admit Dr. Plunkett's curriculum vitae into evidence.

(Docket No. 14-47).

The State of Ohio filed a brief in opposition and Petitioner filed a reply (Docket Nos. 14-48 & 14-49).  The appellate court affirmed the judgment of the common pleas court on October 20, 2009 (Docket No. 14-50).

### 5.    Supreme Court Review of the Petition to Vacate or Set Aside Judgment and Sentence and its Amendment.

On December 3, 2009, Petitioner appealed the affirming of the denial of her post-conviction petition (Ohio Supreme Court Case No. 09-2173) (Docket No. 14-51).  In the memorandum in

13

support of jurisdiction, Petitioner asserted four propositions of law:

(1)     A post-conviction hearing should be granted unless the petition and the files and records of the case show that the petitioner is not entitled to relief.

(2)     Cumulative acts by defense counsel that do not constitute reasonable strategic decisions within the professional norm of attorneys in the practice of criminal defense may constitute a deprivation of a defendant's right to the effective assistance of counsel.

(3).    A trial court must grant civil discovery to a petitioner who files pursuant to OHIO REV. CODE § 2953.21 *et. seq.,* where the petitioner established a good faith basis for the need.

(4)     Where an expert witness is qualified by the court to present opinion evidence, the court must permit the curriculum vitae of that witness to be admitted into evidence so that it could be fully considered by the jury.

(Docket No. 14-52).

Chief Justice Thomas J. Moyer denied Petitioner's request for leave to appeal and dismissed the appeal as not having any substantial constitutional question on March 3, 2010 (Docket No. 14-53).

### 6.     *Resentencing Hearing.*

On January 12, 2009, Petitioner was resentenced to serve an indefinite term of fifteen years to life in the appropriate state penal institution for the offense contained in count one of the indictment, being murder, contrary to and in violation of OHIO REV. CODE § 2903.02(B) (Docket No. 14-64).

### IV. PETITION FOR WRIT OF HABEAS CORPUS IN CUSTODY STANDARD.

A district court shall only direct a writ of habeas corpus of a person in custody pursuant to a judgment of state law if he or she is in custody in violation of the Constitution or laws or treaties of the United State. *Watson v. Ohio,* 2010 WL 2730929, *2 (N. D. Ohio 2010) (*citing* 28 U.S.C. § 2243; *see Braden v. 30th Judicial Circuit Court of Kentucky*, 93 S. Ct. 1123, 1129 (1973) ("The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody."). Therefore, a court has jurisdiction over a habeas corpus

14

petition only if it has personal jurisdiction over the petitioner's custodian. *Id*. at 1129.  For prisoners, the warden of the facility in which they are held is the proper custodian. *Id*. (*see Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2004) (as a general rule, a petitioner should name as a respondent to his habeas corpus petition the individual having day-to-day control over the facility in which petitioner is being detained).

Petitioner is incarcerated at the Ohio Reformatory for Women, located in Marysville, Ohio. She is in custody within the meaning of 28 U. S. C. § 2254.

Respondent is Petitioner's custodian.  In the capacity of warden, Respondent accepted service of process and filed an answer.  Accordingly, this Court has personal jurisdiction over Respondent.   Petitioner alleges that the terms of her incarceration invoked violations of the Sixth and Fourteenth Amendments of the United States Constitution.

Since Petitioner is in custody pursuant to state law, the Court has jurisdiction over the person who holds Petitioner in what she contends is unlawful custody and Petition has alleged violations of the United States Constitution, this Court has jurisdiction to issue a writ of habeas corpus.

## VI. PROCEDURAL FRAMEWORK.

### A.  *Statute of Limitations.*

The Antiterrorism and Effective Death Penalty Act (AEDPA) states that a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." *Robertson v. Simpson,* 624 F.3d 781, 782 (6th Cir. 2010) (*citing* 28 U.S.C. § 2244(d)(1) (2006)).   The limitation period begins to run from the latest of four circumstances"the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* at 781 (*citing* 28 U. S. C. § 2244(d)(1)(A)). If needed, the limitation period may be tolled by a "properly filed application for State

15

post-conviction or other collateral review." *Id*. (*citing* 28 U. S. C. § 2244(d)(2)).

**B.      *Procedural Default*.**

Even if a person in custody files a writ of habeas corpus prior to the expiration of the statutes of limitations, a federal court may not consider contentions of general law which have not been resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure. *Dempsey v. Bobby,* 412 F. Supp. 2d 720, 727 (N. D. Ohio 2005) (*citing Wainwright v. Sykes*, 97 S. Ct. 2497, 2506 (1977)).  Subject to 28 U.S.C. § 2254(b)(1)(A), a federal court is prohibited from granting an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court unless the state courts below have been given a full and fair opportunity to resolve the claim and the petitioner can no longer cure that failure to resolve the claim because the state court remedies are no longer available. *Hicks v. Straub*, 377 F. 3d 538, 551 (6th Cir. 2004) *cert. denied*, 125 S. Ct. 1653 (2005).

When a violation of this state procedural rule is alleged as the basis for the default, the Sixth Circuit has long-employed a four-part test to determine if the claim is procedurally defaulted in a federal habeas proceeding:

> (1)      Does a state procedural rule exist that applies to the petitioner's claim?
> (2)      Did the petitioner fail to comply with that rule?
> (3)      Did the state court rely on that failure as the basis for its refusal to address the merits of the petitioner's claim?
> (4)      Is the state rule violated by the petitioner an adequate and independent state law basis for barring the federal court from considering the claim?

*Kirby v. Beightler*, 2010 WL 3370534, *4 -5 (N. D. Ohio 2010) (*citing Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (citation omitted)).

In addition to establishing these elements, the state procedural rule must be shown to be (a) firmly established and (b) regularly followed before the federal habeas court will decline to review

16

an allegedly procedurally defaulted claim. *Id.* (*citing Smith v. Ohio Department of Rehabilitation & Corrections*, 463 F.3d 426, 431 (6th Cir. 2006) (citations omitted)). If a procedural default is established, the default may be overcome if the petitioner can show cause for the default and actual prejudice from the court's failure to address the alleged constitutional violation. *Id.* (*citing Deitz v. Money,* 391 F.3d 804, 808 (6th Cir. 2004).

To establish "cause" for the default, a petitioner must generally show that some objective factor, something external to himself, precluded him from complying with the state procedural rule. *Id.* (*citing Coleman*, 111 S. Ct. 2546, 2565 (1991)). Demonstrating "prejudice" requires the petitioner to show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting the entire proceeding with error of a constitutional dimension. *Id.* (*citing United States v. Frady*, 102 S. Ct. 1584, 1595 (1982)). There can be no prejudice if the petitioner cannot show a reasonable probability of a different outcome at trial. *Id.* (*citing Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003)).

Procedural default may also be excused by a showing that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 111 S. Ct. 2546, 2565 (1991) (*citing Murray v. Carrier,* 106 S. Ct. 2639, 2649 (1991); *quoting Engle v. Isaac,* 102 S. Ct. 1558, 1575 (1982); *see also Smith v. Murray*, 106 S. Ct. 2661, 2667-2668 (1986); *Harris v. Reed,* 109 S. Ct. 1038, 1043 (1989)). The fundamental miscarriage of justice test is met only in the extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Hargrove-Thomas v. Yukins*, 374 F. 3d 383, 389 (6th Cir. 2004) *cert. denied*, 125 S. Ct. 1827 (2005). To establish the requisite probability, the petitioner must show that it more likely than not that no reasonable juror would have convicted him or her in the light of the evidence that was

17

not presented at trial.  *Id.* (*citing Schlup v. Delo*, 115 S. Ct. 851, 862 (1995)).

**C.      Exhaustion of State Remedies Standard.**

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  *Wegmann v. Jackson*, 2010 WL 1486937, *9 (N. D. Ohio 2010) (*citing* 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 109 S. Ct. 1056, 1059 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991)).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Id.* (*citing Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994)).  A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Id.* (*citing Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 92 S. Ct. 509 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989)).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Id.* (*citing Picard*, 92 S. Ct. at 512; *see also Harris v. Reeves,* 794 F.2d 1168, 1174 (6th Cir.1986)).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Id.* (*citing Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990)).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings . . . Because 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation,' federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

18

*Id.* at *9-10 (*citing Rose v. Lundy*, 102 S. Ct. 1198, 1202 (1982) (*quoting Darr v. Burford*, 70 S. Ct. 587, 590 (1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits.  *Id.* (*citing* 28 U.S.C. § 2254(b)(2)).

## V.  HABEAS CORPUS STANDARD OF REVIEW.

Under the substantive paradigm, federal courts may not grant habeas relief on any claim that was adjudicated on the merits in the state courts unless the adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  *Goodell v. Williams,* 643 F.3d 490, 495 (6th Cir. 2011) (*citing* 28 U.S.C. § 2254(d)).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Id.* (*citing Williams v. Taylor,* 120 S. Ct. 1495, 1523 (2000)).

Under the "unreasonable application" clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case.  *Id*.  Yet, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. (*citing Williams*, 120 S. Ct. at 1522).  Rather, to warrant habeas relief, the application must be found to be "objectively unreasonable."  *Id*. (*citing Williams*, 120 S. Ct. at 1521).  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings.' "  *Id.* at 495-496 (*citing*

*Renico v. Lett,* 130 S. Ct. 1855, 1862 (2010) (*quoting Lindh v. Murphy*, 117 S. Ct. 2059, 2067 (1997)).

In determining whether a state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, a federal court may look only to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision. *Id.* (*citing Lockyer v. Andrade,* 123 S. Ct. 1166, 1172 (2003); *Williams, supra*, 120 S. Ct. at 1523. The "clearly established federal law" is "the governing legal principle or principles set forth by the Supreme Court." *Id.* (*citing Lockye*r, 123 S. Ct. at 1172). "[T]he 'lack of an explicit statement' of a particular rule by the Supreme Court 'is not determinative' of clearly established law, since 'the Court has made clear that its relevant precedents include not only bright-line rules but also the legal principles and standards flowing from precedent.' " *Id.* (*citing Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005) (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002) *cert. denied,* 123 S. Ct. 490 (2002)).

### IV. ANALYSIS

The Petition in this case was timely filed prior to the expiration of the one year statute of limitations provided for filing a habeas petition in 28 U. S. C. § 2244(d). The Magistrate makes the recommendations that follow regarding Petitioner's claims for relief.

### 1. *Ground One*.

Petitioner advances an argument in ground one that the trial court breached the gatekeeping obligation established in *Daubert v. Merrell Dow Pharmaceuticals*, 113 S. Ct. 2786 (1993), that requires the court to ascertain the relevance and reliability of scientific, technical or other specialized knowledge.

It is well established under Ohio law that rulings regarding the admissibility of expert

20

testimony rest with the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Frank v. Vulcan Materials Company,* 55 Ohio App.3d 153, 155, 563 N.E.2d 339 (1988). To constitute an abuse of discretion, an unreasonable, arbitrary or unconscionable attitude on the part of the trial court must be shown by the party asserting a claimed abuse of discretion. *Suburban Community Hospital v. Lindquist,* 69 Ohio St. 2d 302, 307, 432 N. E. 2d 173, 176 (1982) (*citing Lee v. Transfer Company*, 14 Ohio App. 2d 221, 223, 237 N. E. 2d 918 (1967)). When applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Finley v. First Realty Property Management, Ltd.*, 185 Ohio App.3d 366, 388-389, 924 N.E.2d 378, 395 - 396 (2009).

Errors in application, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus. *Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003) *cert. denied*, 124 S. Ct. 345 (2003) (*citing Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983) *cert. denied*, 104 S. Ct. 396 (1983); *see also Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001) ("Because this is an appeal from a habeas corpus decision and not an appeal from Coleman's state conviction, we do not pass upon 'errors in the application of state law, especially rulings regarding the admission or exclusion of evidence.' " *Id.* (*quoting Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988))).

When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief. *Id.* (*citing Coleman*, 244 F.3d at 542; *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)). Courts have defined the category of infractions that violate 'fundamental fairness' very narrowly. *Id.* (*citing Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993) (*quoting Dowling v. United States*, 110 S. Ct. 668, 674 (1990)). Typically, state-court evidentiary rulings do not rise to the level of due process violations unless they

21

offend some principle of justice so rooted in the traditions and conscience of our people that they are ranked as fundamental. *Id.* (*citing Seymour*, 224 F.3d at 552) (*quoting Montana v. Egelhoff*, 116 S. Ct. 2013, 2017 (1996)).

In the instant case, Dr. Sterbenz used Play-doh to make impressions to show the impact of the victim's fall on the stairs.  The trial judge admitted the pictures of Play-doh evidence over Petitioner's objections.  Petitioner has not demonstrated that these pictures were crucial or a highly significant factor in rendering a fair trial.  Neither has Petitioner demonstrated that the trial court's evidentiary ruling was of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  Even though this evidence had the effect of rebutting the testimony of Petitioner's expert witness, there is no clearly established Supreme Court precedent which holds that a state violates due process by admitting into evidence pictures of Play-doh impressions that were limited by its creator's explanation.

Federal habeas corpus does not lie for errors in state law.  The Magistrate recommends that the Court deny Petitioner's first ground for relief for the reasons that relief is predicated on a violation of state evidentiary rules.

### 2. *Ground Two was Procedurally Defaulted*.

Petitioner argues that the trial court placed unwarranted restrictions on Dr. Plunkett's testimony and permitted Dr. Steiner to testify without limitations.  Petitioner asserted such claims on direct appeal.  Petitioner concedes that in the memorandum filed in the Ohio Supreme Court, the claims were abandoned.

Petitioner is without an available appeal to the Supreme Court of Ohio.  The Ohio Court of Appeals affirmed the trial court's decision and Petitioner had forty-five days in which to file an appeal in the Ohio Supreme Court that included the restrictions attributed to Dr. Plunkett's

testimony.  The forty-five day period has expired and Petitioner failed to assert this claim in the Supreme Court of Ohio.

It is well established that a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment.  *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104, 108 (1967) (*citing* OHIO REV. CODE § 2953.21)).  Further, the Sixth Circuit has determined that the application of *res judicata* under OHIO REV. CODE § 2953.21 is an adequate and independent state ground justifying foreclosure of a claim on habeas.  *Rust, supra,* 17 F. 3d at 160.

It is therefore clear that Petitioner failed to comply with a state procedural rule and her claim that Dr. Plunkett's testimony was unduly limited is barred from habeas review.  Specifically, Petitioner failed to invoke the procedural rules because the claims were never brought before Ohio courts.  Such failure is an adequate and independent state law ground for upholding her conviction and sentence.

Petitioner claims that she should prevail on the cause and prejudice analysis because of appellate counsel's failure to present the "Dr. Plunkett" claim to the State's highest court.  However, to succeed on the theory that appellate counsel's failure constitutes cause for the failure to follow the procedural rules, the claim of ineffective assistance of counsel itself must be both exhausted and not procedurally defaulted.  *See Burroughs v. Makowsi*, 411 F. 3d 665, 667-668 (6th Cir. 2005).  Because Petitioner's claim that counsel was ineffective for failing to raise the "Dr. Plunkett" claim is both unexhausted and procedurally defaulted, it cannot serve as a basis for cause to excuse the default.       Similarly, Petitioner's failure to present the claim about the reliability of Dr. Steiner's

23

testimony that should have been raised on appeal from the underlying appellate judgment, was not compliant with the state procedural rule.  Such failure to raise her claim in Ohio courts is an adequate and independent state law ground for upholding her conviction and sentence.  Petitioner does not assert that cause existed for this default.

The claims that the trial court erroneously permitted the State's witness to testify unrestricted and then imposed unwarranted restrictions on Petitioner's witness's testimony, are procedurally defaulted.  Petitioner did not establish an exception to the rules that excuse the default. Consequently, the Magistrate recommends that the Court find neither claim subject to habeas review.

***3.      Ground Three is Procedurally Defaulted***.

Petitioner alleges that the State failed to provide information necessary to conduct an effective cross-examination and/or impeach the state's key witness.  Petitioner concedes that this claim has been procedurally defaulted and the record does not support a cause and prejudice analysis.  The Magistrate recommends that the Court dismiss this claim.

**4**.      ***Ground Four is Procedurally Defaulted.***

Ground four in the Petition focuses on instances of prosecutorial misconduct.  Specifically, the prosecutor vouched for his witnesses, commented on Petitioner's silence and made improper statements during closing argument.

Federal habeas review is generally precluded where a state court decides not to address a petitioner's federal claims because he or she has failed to meet a state procedural requirement "that is independent of the federal question and adequate to support the judgment." *Awkal v. Mitchell,* 613 F.3d 629, 648 -649 (6th Cir. 2010) *cert. denied,* 131 S. Ct. 1002, 2011 (*citing Coleman, supra*, 111 S. Ct. at 2553).  And a state appellate court's plain-error review of a procedurally defaulted

24

claim does not waive the procedural default. *Id.* (*citing Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006)). The Sixth Circuit has held that Ohio's contemporaneous objection rule is an adequate and independent state rule and a defendant who fails to object waives review of the issue in both state review and on federal habeas review, *Id.* at 648-649 (*citing Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005), and that plain-error review is not inconsistent with the procedural default. *Id.* (*citing Lundgren, supra*, 440 F.3d at 765).

Under the established law of this Circuit, a petitioner waives the right to federal habeas review unless she or he can demonstrate cause for noncompliance and actual prejudice arising from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir.2000) (*citing Coleman, supra*, 111 S. Ct. at 2564-2565), and *Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998)). In certain circumstances, counsel's ineffectiveness in failing to properly preserve a claim for review in state court will establish cause. *Burroughs v. Makowski*, 411 F. 3d 665, 667-668 (6th Cir. 2005) (*citing Edwards v. Carpenter*, 120 S. Ct. 1587, 1591 (2000) (*citing Murry v. Carrier*, 106 S. Ct. 2639, 2645 (1986)). To constitute cause, however, the ineffectiveness must itself amount to a violation of the Sixth Amendment and therefore be both exhausted and not procedurally defaulted. *Id.*

Here, the prosecutorial misconduct claim is procedurally defaulted because there was no objection made contemporaneous to any of the prosecution's statements (Docket No. 14-67, pp. 455-456, 467, 501). Petitioner advanced a cause and prejudice argument to excuse her default, arguing that the waiver was the result of defense counsel's ineffective representation. The Magistrate considers the merits of Petitioner's claim that her counsel's failures constitute cause for the failure to launch a contemporaneous objection during the prosecutor's alleged misconduct.

It is well-established that it is inappropriate for a prosecutor to make personal attacks on a

25

defendant or defense counsel. *Dobek v. Berghuis,* 2011 WL 761495, *8 -9 (E. D. Mich. 2011) (*see United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)). Prosecutors may not "make unfounded and inflammatory attacks on the opposing advocate," *Id.* (*citing United States v. Young*, 105 S. Ct. 1038, 1043 (1985)), "or argue that counsel is attempting to mislead the jury." *Id.* (*citing West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008)). Prosecutors may, however, highlight inconsistencies or inadequacies in the defense, *Id.* (*citing Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005)), point out the lack of evidence supporting the defense theory, *Id.* (*citing United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005), and argue from the facts that a defense witness, including a testifying defendant, is not worthy of belief. *Id.* (*see Portuondo v. Agard*, 120 S. Ct. 1119, 1125 (2000); *Christini,* 526 F.3d at 901-02). Moreover, a prosecutor's description of a defense argument as a red herring, a smoke screen, or a distraction is not *per se* improper. *Id.* (*See United States v. Bernard*, 299 F.3d 467, 487-88 (5th Cir. 2002); *United States v. Rivera*, 971 F.2d 876, 883 (2nd Cir.1992)).

The prosecutor may not vouch for the credibility of the witnesses in their closing statements. *United States v. Boyd*, 640 F. 3d 657, 671 (6th Cir. 2011). An attorney may not express a personal belief or opinion as to the credibility of a witness. *State v. Davis*, 116 Ohio St.3d 404, 437, 880 N.E.2d 31, 69 (2008); *State v. Williams*, 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997)). Vouching occurs when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue. *Id.* (*see State v. Jackson*, 107 Ohio St.3d 53, 836 N.E.2d 1173, ¶ 117 (2005)).

In this case, the prosecutor emphasized that Dr. Plunkett just "travels around and gives expert testimony," he "gets paid, he flies and he comes down here and says this is the way it is"; and "[he] gets paid fifty-five hundred dollars and comes down here;" the prosecutor asked the jury to discount Dr. Plunkett's testimony because he does not see patients, when the prosecution knew that forensic

26

pathologists are not in a position to see and treat patients.  The prosecutor stated that "if any of your children were hurt, that's where they would go.  It's the best place with the best people.  And Dr. Steiner is one of those best people. . . ."  And the prosecutor stated that the jurors had not heard a version of the facts from any witness that the decedent went to the edge of steps and fell off backwards (Docket No. 14-67, pp. 463, 464, 497, 498, 500).

The Magistrate is persuaded that defense counsel's failure to object to these characterizations does not constitute ineffective assistance of counsel.  Dr. Plunkett testified that he was being paid for his services and that he had not treated an abused child for thirty years (Docket No. 14-67, pp. 274, 378 of 524).  The prosecutor merely recounted Dr. Plunkett's admissions.  The prosecutor's characterization of Dr. Steiner was that he was a good physician with privileges at an outstanding pediatric health care center (Docket No. 14-67, p. 1390).  He did not give Dr. Steiner his personal endorsement.  In all reasonable probability, the outcome of the trial would not have been different if defense counsel had objected to the conclusions made by the prosecutor about Dr. Steiner in his closing.  Neither does Petitioner allege facts sufficient to show that the failure to object to the closing argument has created a substantial likelihood of a miscarriage of justice.

In light of the failure to meet the procedural requirements and then provide a basis for excusing such failure, Petitioner's fourth claim is procedurally defaulted.  The Magistrate recommends that the Court deny this claim as it is not cognizable in habeas review.

(**5**)    ***Trial counsel's representation was ineffective and prejudicial***.

Petitioner asserted that her conviction and sentence were void and/or voidable because she was denied the effective assistance of counsel.  Petitioner presented the following errors:

1.    Trial counsel failed to object to the gruesome, irrelevant, prejudicial photographs of the decedent and counsel stipulated to 19 photographs about which there was no testimony.
2.    Trial counsel failed to object to the testimony of the State's non-pathologist experts

27

as to the cause of death.

3.    Trial counsel failed to conduct an appropriate direct examination of Dr. Plunkett.

4.    Trial counsel failed to object to the prosecutor's improper closing argument.

5.    Trial counsel failed to fully investigate the background of the state expert pathologist which was presented in the petition to vacate and abandoned on the memo to the Supreme Court

6.    Trial counsel failed to redact unfairly prejudicial information from the autopsy report which was not presented on the direct appeal.

7.    Trial counsel failed to confront Dr. Steiner with evidence that he had given erroneous medical opinions in the past.

**A.**    ***Some of Petitioner's Claims are Procedurally Defaulted.***

Assessing these issues for compliance with the procedural mandates, the undersigned finds that issues two, three, five and six are procedurally defaulted.  Issue two–trial counsel failed to object to the testimony of the State's non-pathologist experts as to the cause of death--was presented in the direct appeal and abandoned when presented to the Supreme Court of Ohio.  Similarly, issue three–trial counsel failed to conduct an appropriate direct examination of Dr. Plunkett–was not presented on direct appeal but presented in the petition to vacate; however, the issues were abandoned in the appeal of the petition to vacate to the Supreme Court.  Issue five–trial counsel failed to fully investigate the background of the state expert pathologist–was not presented on the direct appeal.  Arguably issue six--trial counsel failed to redact unfairly prejudicial information from the autopsy report–was presented for the first time in the petition to vacate but abandoned in the memorandum to the Supreme Court of Ohio.

Petitioner suggests that these instances of ineffectiveness serve as good cause for failure to assert these claims on direct appeal.  The Magistrate reiterates that in order for ineffective assistance of counsel claims to serve as good cause for procedural default, such claims must be exhausted and not procedurally defaulted.

At this juncture in the litigation, the exhaustion question is rendered moot by the absence of available relief in state court.  Since the substance of claims two, three, five and six have not been

28

presented to the highest court in the state in which Petitioner was convicted, no exhaustion problem exists as there is no available remedy in the state courts.  Additionally, Petitioner has not shown that some objective factor precluded her from using available mechanisms to comply with the state procedural rules.  Neither has she argued nor demonstrated how the alleged constitutional errors somehow worked to her actual and substantial disadvantage, infecting the entire proceeding with error of a constitutional dimension.

For these reasons, the Magistrate finds that claims two, three, five and six cannot serve as a basis for cause and prejudice since they are procedurally barred from habeas review.  It is recommended that the Court deny claims two, three, five and six.

**B.**     ***Ineffective Assistance of Counsel Standard.***

To establish ineffective assistance of counsel, a habeas petitioner must show both deficient performance and prejudice. *Richey v. Bradshaw,* 498 F.3d 344, 361 (6th Cir. 2007) (*citing Strickland v. Washington*, 104 S. Ct. 2052 (1984)).  A lawyer is deficient when his or her performance falls below an objective standard of reasonableness.  *Id.*  A defendant is prejudiced by his or her lawyer's deficient performance where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 361-362 (*citing Strickland*, 104 S. Ct. at 2068).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* (*citing Strickland*, 104 S. Ct. at 2068).

**a.**     ***Claim One–Failure to Object to the Admission of Evidence***.

Petitioner presented claim one on direct appeal and to the Supreme Court:  trial counsel failed to object to the gruesome, irrelevant, prejudicial photographs of the decedent and counsel stipulated to 19 photographs about which there was no testimony.

Under OHIO EVID. R. 402, 611(A), the admission of photographs is left to the sound discretion of the trial court.  Generally, properly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number."  *State v. Smith*, 97 Ohio St.3d 367, 373-374, 780 N.E.2d 221, 230 - 231 (2002) (*citing State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768, paragraph seven of the syllabus (1984); *See, also, State v. Morales*, 32 Ohio St.3d 252, 257–258, 513 N.E.2d 267 (1987); *State v. Twyford*, 94 Ohio St.3d 340, 357–358, 763 N.E.2d 122 (2002)).

The photographs in question reveal bruises on the victim's body.  The autopsy slides depict injuries to the victim's internal organs.  The photographs and slides of the deceased minor are arguably gruesome.  The trial judge was persuaded that the admission of these photographs was appropriate because they could be used to assist the coroner in his testimony.  The Magistrate finds no reversible error in the admission of the photographs authenticated by the coroner and considered relevant under OHIO R. EVID. 401 by the court.  An objection to the admissibility of the evidence on the basis that the photographs were not probative or irrelevant would have been futile.  Counsel was not ineffective for failing to object to admissible evidence.

Petitioner also challenges the propriety and wisdom of counsel in stipulating to the admission of 19 photographs.  A trial counsel's decision to enter into stipulations is a tactical decision and thus properly a matter of counsel's trial strategy.  *State v. Green*, 66 Ohio St.3d 141, 609 N.E.2d 1253 (1993).  The role of trial counsel, acting as a party's legal representative, necessarily encompasses the authority to pursue a trial strategy that counsel deems is in the best interests of his or her client, including a strategy of entering into certain stipulations of undisputed fact.  *Id.*  A party claiming

30

ineffective assistance of counsel based upon his or her counsel entering into such stipulations must still show that the two prongs of the *Strickland* analysis are present. *Id.*

In hindsight, counsel's acquiescence to the admission of 19 photographs appears unreasonable. However, Petitioner has not overcome the presumption that counsel's decision was manifestly reasonable when undertaken and that he made a reasoned choice to stipulate to the admission of 19 photographs as a viable trial tactic. This is particularly so because the evidence was admissible under the rules of evidence. The decision to stipulate to the admissibility of admissible evidence does not state a viable Sixth Amendment ineffective assistance of counsel claim that satisfies the prejudice prong of the *Strickland* test. The Magistrate recommends that the Court deny this claim as it lacks merit.

**b.**     ***Claim four: Failure to Object to the Prosecutor's Closing.***

Petitioner's claim that trial counsel failed to object to the prosecutor's improper closing argument was presented on direct appeal and to the Supreme Court of Ohio. The Magistrate has already determined that the failure of trial counsel to lodge a contemporaneous objection, with the exception of plain error review, waived habeas review of this issue. Petitioner was unable to overcome the cause, prejudice or manifest injustice components of the analysis that could result in excusing the default. The Magistrate finds that claim four is procedurally defaulted and not subject to habeas review.

**c.**     ***Claim Seven:  The Cross-Examination of Dr. Steiner***.

Petitioner argues that trial counsel failed to conduct a competent cross-examination of Dr. Steiner, thereby permitting false testimony to go unchallenged. It is Petitioner's contention that counsel's failure to challenge Dr. Steiner regarding his mistakes or the defense expert's conclusions

31

resulted in an unfair trial.

The Confrontation Clause of the Sixth Amendment guarantees to the criminal defendant the right "to be confronted with the witnesses against him." *Mitchell v. Jones,* 622 F.Supp.2d 593, 621 -622 (W. D. Mich. 2008) (*citing* U.S. CONST., am. VI, cl. 5).  The Supreme Court has held that this right "means more than being allowed to confront the witness physically.  *Id.*  The Confrontation Clause generally guarantees only "an opportunity for effective cross-examination," *Id.* (*citing Delaware v. Fensterer*, 106 S. Ct. 292, 294-295 (1985)).  It does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id*. (*citing Delaware*, 106 S. Ct. at 294-295; *see also Delaware v. Van Arsdall*, 106 S. Ct. 1431, 1435 (1986)). In *Chambers v. Mississippi*, 93 S. Ct. 1038, 1049 (1973), the Court made clear that in the exercise of this right, "the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. at 621-622.  The right to present relevant evidence during cross-examination "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id.* (citations omitted).

Defense counsel conducted a cross-examination in which he challenged, at length, the conclusions made by Dr. Steiner about injury sustained when a body fell down the stairs.  Defense counsel referred to articles he forwarded to Dr. Steiner and questioned him on such articles.  He did not attack the mistakes Dr. Steiner made in other cases (Docket No. 14-66, pp. 713-753 of 923).  Petitioner was entitled to the opportunity of a cross examination of Dr. Steiner.  Petitioner can point to no governing legal principle or principles set forth by the Supreme Court that he was entitled to a particular mode of cross-examination by defense counsel.

Petitioner has not shown that she was prejudiced by her lawyer's deficient performance or

that without her counsel's performance, she would have obtained a different result.  The Magistrate finds that defense counsel's cross-examination did not fall below an objective standard of reasonableness.  The Court should dismiss this claim.

**(6)    The Cumulative Errors.**

Petitioner argues that all of the errors in this case should be cumulated with the ineffective assistance of counsel claims.  Petitioner failed to raise these cumulative error claims on direct appeal or even in the motion to vacate or set aside judgment and sentence.

In the Sixth Circuit, cumulative error arguments must be raised separately in the state court and are subject to procedural default on habeas review.  *Abdur'Rahman v. Colson,* 649 F.3d 468, 472 (6th Cir. 2011) (*citing Keith v. Mitchell,* 455 F.3d 662, 679 (6th Cir. 2006) (*citing Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)).  Because Petitioner raised these cumulative error arguments for the first time on habeas review, the district court may not consider her claims here.  Bound by this circuit's precedents, this Court is foreclosed from review of Petitioner's cumulative errors claim.

<h3 style="text-align:center">V. CONCLUSION.</h3>

For these reasons, the Magistrate recommends that the Court deny the Petition for Writ of habeas corpus and terminate the referral to the undersigned Magistrate.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   March 28, 2012

<h3 style="text-align:center">VII. NOTICE</h3>

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to the report and recommendations within fourteen (14) days after being

served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.

34