**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARSHA MILLS, | ) | CASE NO. 5:11CV408 |
| | ) | |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| GININE TRIM, Warden, | ) | |
| | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court are petitioner's objections (Doc. No. 25)[1] to the Report and Recommendation ("R&R") (Doc. No. 24) of Magistrate Judge Vernelis K. Armstrong, recommending denial of the petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. Respondent has filed neither objections nor a response to petitioner's objections. The matter is ripe for determination.

## I. PROCEDURAL AND FACTUAL BACKGROUND

The underlying facts and procedural history are not challenged and need be recounted here only briefly, for the sake of context.

Petitioner, Marsha Mills, was indicted on October 6, 2006 by a Tuscarawas County grand jury on three counts of murder in violation of Ohio Rev. Code § 2903.02(B), one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1), and two counts of endangering children in violation of Ohio Rev. Code § 2919.22(B)(1) and (B)(3). (Return of

[1] Petitioner is represented by counsel in this proceeding.

Writ ["Return"], Doc. No. 14-1.)[2] The charges stemmed from an incident that occurred on May 10, 2006 at petitioner's home, where she was babysitting four children, including the victim, Noah Shoup. While in petitioner's care, Noah suffered head injuries which subsequently led to his death. Petitioner claimed the injuries were the result of an accidental fall down her back porch steps and the subsequent medical treatment. The State argued that the injuries resulted from physical abuse.

On June 15, 2007, following a jury trial, petitioner was found guilty of murder (counts one and two of the indictment), felonious assault (count four), and endangering children (count five).[3] (Doc. No. 14-22.) She was sentenced on June 20, 2007 to an indefinite term of fifteen (15) years to life for each of the two murder convictions, eight (8) years for the felonious assault conviction, and eight (8) years for the endangering children conviction, all to be served concurrently. (Doc. No. 14-24.)

On July 2, 2007, represented by counsel, petitioner timely filed her direct appeal,[4] raising seven (7) assignments of error.[5] (Doc. Nos. 14-25, 14-32.)[6] On April 15, 2009, the Fifth

[2] Due to the separate filing of Exhibit 38 to the Return (*see* Doc. No. 19), Exhibits 1 through 37 in the Return are correctly numbered, but Exhibits 39 and the following are all one number off in the electronic filing system. For ease of reference, in this opinion, the exhibits will be referred to by their full docket number.

[3] During the course of the trial, the State dismissed counts three and six of the indictment. (Doc. No. 14-22 at 3374.)

[4] The direct appeal was subsequently delayed somewhat by a remand to the trial court for articulation of its reasons for denying petitioner's motion for stay of execution of the judgment, a motion which had been renewed before the Court of Appeals. (*See* Doc. No. 14-28.)

[5] The assignments of error raised were:

1. The court erred when it placed unwarranted restrictions on the defendant's expert witness and allowed the State to introduce evidence of a scientific experiment without conducting the required pretrial hearing on admissibility.

2. The trial court committed plain error when it admitted irrelevant, gruesome, repetitive and substantially prejudicial photographs of the deceased child in violation of Mills' constitutional rights.

3. The verdict was against the manifest weight of the evidence and defendant's conviction was not supported by sufficient evidence.

District Court of Appeals of Ohio rejected all but the seventh assignment of error (Doc. No. 14-35), remanding the case "with instructions to merge appellant's convictions for child endangering and felonious assault into the convictions of felony murder, to merge the two counts of felony murder into one and to enter a single conviction and impose a single sentence for these allied offenses." (*Id.* at 3704.)

Mills, still represented by counsel, timely filed an appeal to the Ohio Supreme Court, raising seven (7) propositions of law.[7] (Doc. Nos. 14-36, 14-37.) The appeal was

---

4. The court erred when it failed to record all of the proceedings in the case.

5. Appellant was deprived of effective assistance of counsel due to numerous errors and omissions which prejudiced appellant's trial.

6. The prosecution prejudiced the outcome of the case through improper closing argument.

7. The trial court erred in imposing multiple punishments for allied offenses of similar import contrary to R.C. § 2941.25 and the double jeopardy clause of the Ohio and United States Constitutions.

(Doc. No. 14-32 at 3460-61.)

[6] While appellate briefing was occurring, on April 28, 2008, represented by counsel, Mills also filed in the common pleas court a motion to vacate or set aside judgment and sentence, primarily based on claims of ineffectiveness of trial counsel. (Doc. Nos. 14-41, 14-42.) The State moved for dismissal, and the motion was granted by the trial court on July 18, 2008, on a finding that all fifteen (15) claims for relief were barred by *res judicata*. (Doc. Nos. 14-43, 14-45.) The trial court also rejected a motion for reconsideration. (Doc. Nos. 14-54, 14-56.) Appeals from both rulings to Ohio's Fifth District Court of Appeals were unsuccessful (Doc. Nos. 14-50, 14-60), as were appeals to the Ohio Supreme Court (Doc. Nos. 14-53, 14-63).

[7] The propositions of law were:

1. A witness who has been qualified as an expert pursuant to Ohio Rule of Evidence 702 may not provide an expert opinion that is based on an untested, potentially unreliable methodology, even if that methodology appears to be straightforward to a lay person. In all cases, an expert's methodology or process, upon which his or her expert opinion is based, must be demonstrated to be reliable and, when that opinion is based on the result of a procedure, test, or experiment, it must comply with Ohio R. Evid. 702(C)(1)-(3) before being admitted into evidence. Admitting an expert opinion into evidence in contravention of this rule results in a violation of the Fifth and Sixth Amendments to the United States Constitution as incorporated by the Fourteenth Amendment, and Section 10, Article I of the Ohio Constitution.

2. The Fifth and Sixth Amendments to the United States Constitution as incorporated by the Fourteenth Amendment, Art. I, Sections 10, 16 of the Ohio Constitution, and Ohio R. Evid. 401 and 403 prohibit the admission of autopsy photographs that are not probative, not relevant and highly prejudicial. The introduction of such photographs therefore constitutes plain error. Further, the failure to object to the admission of such photographs constitutes ineffective assistance of counsel.

dismissed on August 26, 2009 "as not involving any substantial constitutional question." (Doc. No. 14-38.) A motion for reconsideration as to only the first proposition of law was denied on November 4, 2009. (Doc. Nos. 14-39, 14-40.)

On January 12, 2010, responding to the remand of April 15, 2009, the trial court resentenced Mills to an indefinite term of fifteen (15) years to life. (Doc. No. 14-64.)

On February 25, 2011, the instant petition was filed by Mills, through counsel, raising the following grounds for relief:

1. Improper admission of junk science
2. Improper restriction on presentation of defense case
3. *Brady* claim
4. Prosecutor misconduct
5. Ineffective assistance of trial counsel
6. Cumulative errors

(Petition, Doc. No. 2-1, passim.)

---

3. When evidence is equipoised in a criminal case, the defendant must be acquitted, and to hold otherwise is a violation of the defendant's Fifth and Sixth Amendment Rights to Due Process and a Fair Trial, respectively, as incorporated by the Fourteenth Amendment, and the Ohio Constitution, Article I, Section 10, 16, and the Ohio Rules of Evidence.

4. Ineffective assistance of counsel in violation of a defendant's Sixth Amendment Right to counsel as incorporated by the Fourteenth Amendment, can be found when trial counsel's cumulative errors prejudice the outcome of trial and deny the defendant a fair trial.

5. Out-of-court statements made by the defendant that are not admissions against interest are hearsay pursuant to Evid. R. 801(D)(2) and to allow their admission denies the defendant's Fifth and Sixth Amendment Rights to Due Process and a Fair Trial, respectively, as incorporated by the Fourteenth Amendment.

6. The outcome of a trial can be prejudiced by a prosecutor's misconduct no matter when it occurs during the trial process, from jury selection to rebuttal closing arguments, especially when the prosecutor vouches for his witnesses and comments on the defendant's silence, violating the defendant's Fifth and Sixth Amendment Rights to Due Process and a Fair Trial and Counsel, respectively, as incorporated by the Fourteenth Amendment.

7. When a court of appeals bases its decision on an incorrect reading of the record, the Supreme Court will vacate that decision and remand the case to the court of appeals to be reanalyzed and redrafted using the correct set of facts; otherwise, the defendant is denied his or her rights under the Fifth and Sixth Amendments to the United States Constitution as incorporated by the Fourteenth Amendment.

(Doc. No. 14-37 at 3708-09.)

Respondent filed the Return of Writ on September 1, 2011 (Doc. No. 14), and petitioner filed her Traverse on October 1, 2011 (Doc. No. 22).

## II. DISCUSSION

### A. Standard of Review

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party."). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In conducting its de novo review in a habeas context, this Court must be mindful of the requirements of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, -- U.S. --, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

In addition, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant [for a writ of habeas corpus] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B. Analysis**

**1. Grounds Two, Three, Four, and Six**

The R&R recommends that grounds two, three, four, and six be dismissed as procedurally defaulted. Petitioner has filed no objection, other than to state: "The Report and Recommendation incorrectly denied the majority of the petition." (Doc. No. 25 at 6079.) This simple conclusory statement does not amount to a proper objection.

Therefore, the recommendation to dismiss grounds two, three, four, and six as procedurally defaulted is accepted by the Court.

**2. Ground One**

In ground one, petitioner asserts that the trial judge "allowed two different [S]tate expert witnesses to improperly testify to matters beyond their expertise regarding highly speculative and unproven 'scientific' theories. One of the witnesses [Dr. George Sterbenz] used Play-doh for experimentation regarding the child's fall. Another witness [Dr. Richard Daryl Steiner] discussed the reasons why a person would abuse a child." (Doc. No. 2-1 at 68.)

The R&R recommends dismissal of ground one because it relates to alleged errors regarding admissibility of evidence—a matter that is usually not cognizable in federal habeas corpus, absent violation of some "principle of justice so rooted in the traditions and conscience of our people that they are ranked as fundamental." (Doc. No. 24 at 6058, citing cases.) In particular, the R&R concludes:

> In the instant case, Dr. Sterbenz used Play-doh to make impressions to show the impact of the victim's fall on the stairs. The trial judge admitted the pictures of Play-doh evidence over Petitioner's objections. Petitioner has not demonstrated that these pictures were crucial or a highly significant factor in rendering a fair trial. Neither has Petitioner demonstrated that the trial court's evidentiary ruling was of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. Even though this evidence had the effect of rebutting the testimony of Petitioner's expert witness, there is no clearly established Supreme Court precedent which holds that a state violates due process by admitting into evidence pictures of Play-doh impressions that were limited by its [sic] creator's explanation.
>
> Federal habeas corpus does not lie for errors in state law. The Magistrate recommends that the Court deny Petitioner's first ground for relief for the reasons that relief is predicated on a violation of state evidentiary rules.

(*Id.*)

Petitioner objects, asserting that the recommendation "simply ignores the Supreme Court mandate of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579[, 113 S. Ct. 2786, 125 L. Ed. 2d 469] (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 1175[, 143 L. Ed. 2d 238] (1999), which did attach due process protection for the admission of essentially junk science, as occurred here." (Doc. No. 25 at 6082.)

The gravamen of ground one, as it relates to the testimony of Dr. Sterbenz (a forensic pathologist employed by the Summit County Medical Examiner's Office, who performed the autopsy on Noah Shoup), was that, without first conducting a *Daubert* hearing, the trial court permitted Dr. Sterbenz to compare photographs of Play-doh impressions he made of the stair treads at Mills's home to the injuries on the victim's neck, as a means of concluding that those injuries were not the result of a fall down the stairs.[8] Petitioner characterizes the Play-doh methodology as "junk science" that should not have been permitted, at least not without first conducting a hearing to perform the inquiry required by *Daubert*: determining whether the expert's testimony reflects "scientific knowledge," that is, "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. Petitioner is not arguing that a *Daubert* hearing is required in every case; but, she asserts a hearing was required here because "the method relied upon [i.e., Play-doh models] is new, constroversial [sic] and has not been accepted by courts previously[.]" (Doc. No. 22 at 6005.)

Petitioner maintains that, when examining the admissibility of Dr. Sterbenz's testimony and use of photographs of Play-doh models to illustrate his testimony for the jury, the

[8] The testimony was elicited when Dr. Sterbenz was re-called to rebut the testimony of petitioner's expert, Dr. John J. Plunkett.

Ohio court of appeals mistakenly "just decided that in its view it was all simple, when in reality, the matter is much more complex." (Doc. No. 25 at 6086.)

As noted above, this Court may grant habeas relief only if a claim adjudicated on the merits in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1).

Here, in a thorough discussion wherein it quoted at length from Dr. Sterbenz's testimony (*see* Doc. No. 14-35 at 3664-75), the Fifth District Court of Appeals carefully applied the principles of *Daubert* and *Kumho Tire*. In particular, that court noted that a trial court's determination regarding admissibility of evidence, including expert testimony, is subject to an abuse of discretion standard, which "applies as much to the trial court's decisions about how to determine reliability as to its ultimate conclusion." (Doc. No. 14-35 at 3674, quoting *Kumho Tire*.) In full context, the Court in *Kumho Tire* stated:

> The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable. Our opinion in *Joiner* makes clear that a court of appeals is to apply an abuse-of-discretion standard when it "review[s] a trial court's decision to admit or exclude expert testimony." 522 U.S., at 138-139, 118 S.Ct. 512. That standard applies as much to the trial court's decisions about how to determine reliability as to its ultimate conclusion. Otherwise, the trial judge would lack the discretionary authority needed both to avoid unnecessary "reliability" proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises. Indeed, the Rules seek to avoid "unjustifiable expense and delay" as part of their search for "truth" and the "jus[t] determin[ation]" of proceedings. Fed. Rule Evid. 102. Thus, whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine. See *Joiner, supra*, at 143, 118 S.Ct. 512.

*Kumho Tire*, 526 U.S. at 152-53.

The court of appeals also correctly noted that a hearing on the admissibility of Dr. Sterbenz's testimony, and his use of photographs of Play-doh models, had been conducted pre-trial. At that time, Mills's only argument was based on Ohio evidence rules and consisted of a challenge to whether Dr. Sterbenz could be qualified as an expert in accident reconstruction and biomechanics. At trial, Mills never requested a *Daubert* hearing and did not renew her objection to the testimony of Dr. Sterbenz. (Doc. No. 14-35 at 3664-65.) In addition, at trial, counsel had the opportunity to cross-examine Dr. Sterbenz, both after his direct testimony and after he was called to rebut the testimony of Mills's own expert, Dr. Plunkett, as to the cause of Noah's death.[9]

Whether or not this Court agrees with the decisions of the state courts, or views them as correct or incorrect, is not the issue in the habeas context. The issue under § 2254 is whether the decisions were "contrary to" or an "unreasonable application of" established Supreme Court precedent. That conclusion cannot be drawn with respect to the decisions of the state courts regarding Dr. Sterbenz's testimony and methods.[10]

Petitioner's objection with respect to the R&R's recommendation as to ground one is overruled and the recommendation is accepted.

[9] That said, the cross-examination following the re-call of Dr. Sterbenz was extremely brief and did not actually attempt to challenge the science of what he had done with the Play-doh. (Doc. No. 14-66 at 5778.)

[10] In ground one, Mills also challenged the trial court's decision to allow Dr. Richard Daryl Steiner, a pediatrician, to testify as to the reasons why a person would abuse a child. (Doc. No. 2-1 at 68.) The R&R did not specifically address this portion of ground one, a fact merely noted in passing by Mills. (Doc. No. 25 at 6082: "The [R&R] did not comment on Dr. Steiner's testimony outside of his expertise.") Although a few paragraphs in the Objections repeat allegations made in the Petition regarding Dr. Steiner, the Court finds no true objection or argument and, therefore, sees no need to separately address this portion of ground one.

**3. Ground Five**

In ground five, petitioner claims ineffectiveness of trial counsel in several respects. Although ineffectiveness of counsel is often raised in the habeas context as cause for the procedural default of another claim, petitioner is not raising it in that manner. Rather, she is simply asserting an outright Sixth Amendment violation, claiming that her trial counsel was so thoroughly ineffective that her "conviction and sentences are void and/or voidable[.]" (Doc. No. 2-1 at 90.)

To establish ineffective assistance of counsel, petitioner must show (1) "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment[;]" and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A petitioner must also be able to establish that the claim of ineffectiveness of counsel is not itself procedurally defaulted.

***a. Four sub-claims procedurally defaulted***

The R&R concluded that the following four (4) sub-claims of ground five are procedurally defaulted, because of failure to exhaust them before the state courts, resulting in there being no remaining available form of relief from those courts: failure to object to testimony by the state's non-pathologist experts as to cause of death; failure to conduct an effective direct examination of Mills's expert, Dr. John Plunkett; failure to fully investigate the background of the state's expert pathologist, Dr. Richard Daryl Steiner; and, failure to redact unfairly prejudicial information from the autopsy report.

The R&R recommends dismissal of these sub-claims. Mills has not objected to this recommendation, and it is, therefore, accepted by the Court.

***b. One sub-claim lacks merit***

The R&R also concluded that the sub-claim relating to the failure to object to photographs lacks merit and should be dismissed.

Mills has not objected to this recommendation, and it is, therefore, accepted by the Court.

***c. One sub-claim not subject to habeas review***

The R&R's treatment of the sub-claim that trial counsel was ineffective due to failure to object to the prosecuting attorney's improper closing argument is not particularly clear. The conclusion appears to be that *this sub-claim* of ineffective assistance is procedurally defaulted because *the underlying claim* of prosecutorial misconduct was disposed of in the state court by application of an adequate and independent state ground (i.e., Ohio's contemporaneous objection rule), rendering that underlying claim procedurally defaulted and not subject to habeas review. The R&R further concludes that petitioner has failed to establish the requisite cause and prejudice to overcome the default of this claim.

Petitioner's objection with respect to this sub-claim of ground five is equally unclear. Petitioner argues at length about all the alleged instances of prosecutorial misconduct, concluding that the misconduct was "so flagrant and prejudicial that it resulted in a trial that was fundamentally unfair." (Doc. No. 25 at 6091.) Petitioner then comments briefly on the R&R, stating: "the failure of counsel to object is the basis of the ineffective assistance of counsel claim, which has not been defaulted. Therefore, the magistrate erred in refusing to address the merits of this aspect of the claim." (*Id*.)

A review of the record here shows that Mills raised this very claim of ineffectiveness, along with six others, before the Ohio court of appeals. (Doc. No. 14-35 at 3684-

85.)[11] Interestingly, although that court addressed each of the six other claims, it did not address this claim of failure to object to the prosecutor's closing argument. (*See id.* at 3686-90.) Perhaps this was inadvertence; or perhaps it had to do with the fact that the petitioner also raised before that court, as she does here, a challenge on the merits of an underlying claim of prosecutorial misconduct, which the Ohio court of appeals rejected.

Assuming only for the sake of this opinion that this sub-claim is properly before this Court, it is petitioner's burden to establish that failure to object to the prosecutor's closing arguments actually was ineffectiveness on the part of counsel, and not mere trial strategy. Petitioner has made no attempt at such a showing. The entire argument in her petition in support of this sub-claim is: "The Petitioner's Fourth claim for Relief is incorporated here." (Doc. No. 2-1 at 93.) However, all of the arguments in the fourth claim for relief (which the R&R found procedurally defaulted, without any objection from petitioner) relate solely to the merits of the underlying claims of prosecutorial misconduct and contain *no* arguments under *Strickland* and its progeny to convince this Court that her trial counsel was ineffective.

The Objections are no better by way of argument, stating simply: "[T]he magistrate erred in refusing to address the merits of this aspect of the claim." (Doc. No. 25 at 6091.) There is *no* legal argument made under *Strickland*.

Having conducted a de novo review with respect to this sub-claim of ground five, the Court concludes that petitioner has completely failed to meet her burden, and that this sub-claim should be dismissed.

[11] The claim was also included in her memorandum in support of jurisdiction filed with the Ohio Supreme Court. (Doc. No. 14-37.)

***d. Another sub-claim fails on the merits***

Petitioner asserts ineffectiveness of trial counsel due to failure to confront Dr. Steiner with evidence that he had given erroneous medical opinions in the past. The R&R concludes that "[p]etitioner has not shown that she was prejudiced by her lawyer's deficient performance or that without her counsel's performance, she would have obtained a different result." (Doc. No. 24 at 6068-69.) The R&R further concludes that "defense counsel's cross-examination did not fall below an objective standard of reasonableness." (*Id.* at 6069.) Therefore, the R&R recommends dismissal of this sub-claim.

The only argument petitioner makes by way of objection is as follows:

> [T]he governing legal principle here is the denial of her right to effective assistance of counsel. Counsel's failure to make known to the jury that the prosecutor's key witness had erred in similar circumstances was key to the outcome of this case. The verdict of the jury was necessarily based upon its assessment of the credibility of the experts called by both parties. The failure to expose a state witness of having misdiagnosed the cause of deaths of children in other cases clearly could have tipped the scales here. The resultant verdict was therefore, unreliable.

(Doc. No. 25 at 6093.)

Although petitioner fails in this single conclusory paragraph to make a showing of ineffective assistance of counsel under *Strickland*, the Court rejects this sub-claim for an entirely different reason than that given by the R&R.

A review of Mills's appellate brief filed in her direct appeal to the state court reveals that, although she raised several instances of alleged ineffective assistance of trial counsel, failure to properly cross-examine Dr. Steiner about his past erroneous medical opinions was not raised. This particular claim was not raised until she filed her petition to vacate or set aside judgment. (Doc. No. 14-41.) The trial court rejected the claim on the ground of *res*

*judicata*, because it "could have been raised on direct appeal, and the outside evidence presented by Mills in support of her Tenth Claim for Relief was not cogent." (Doc. No. 14-45 at 3890.)

Because *res judicata* prevented Mills from obtaining review in state court of this sub-claim, it is procedurally defaulted and cannot be reviewed by this Court on habeas, absent a showing of cause for the default and prejudice. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (four-part test for determining whether a procedural default is a bar to habeas review).

Petitioner has made no such argument, at least not in any non-conclusory fashion. Even assuming a showing of cause for the default, petitioner has not shown how she was prejudiced. Although declaring that the fact that Dr. Steiner had erred in similar circumstances was "key to the outcome" of her case, she does not show this Court how, in light of all the other evidence, she could not possibly have been convicted had this fact been known to the jury.

The Court rejects this sub-claim, finding it procedurally defaulted, with no showing of cause for the default or prejudice to her case.

## III. CONCLUSION

For the reasons set forth herein, petitioner's objections are overruled. The R&R is accepted in part and, for the reasons stated therein and in this opinion, the petition for writ of habeas corpus is denied and this case is dismissed. Further, the Court certifies that an appeal from this decision could not be taken in good faith and there is no basis upon which to issue a certificate of appealability. 28 U.S.C §§ 1915(a)(3), 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: February 25, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**